UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JAMES LEROY HERRINGTON, | Case No.: 2:13-cv-0948-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| DR. ELLIOTT-BLAKESLY; DR. BRISTOL; A. CLEMENTS; and JAMES TAYLOR, | |
| Defendants. | |

Judge ACOSTA, Magistrate Judge:

*Introduction*

James Leroy Herrington ("Herrington") filed this claim for violation of 42 U.S.C. § 1983 against eleven[1] doctors, nurses, and administrators (collectively "Defendants") at Snake River

---

[1] The caption of Herrington's complaint lists only Dr. Elliott-Blakesly and Dr. Bishop as defendants, the portion of his complaint listing defendants includes seven other individual and organizational defendants, and Herrington's claims for relief name two additional defendants.

OPINION & ORDER                     1                          [RMD]

Correctional Institution ("S.R.C.I.") where Herrington is currently incarcerated. Herrington alleges Defendants violated his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment. Defendants now move to dismiss for failure to state a claim upon which relief can be granted. The court grants the motion and dismisses all four of Herrington's claims for relief.

*Background*

Herrington, an inmate at S.R.C.I., suffers from hepatitis C, a viral disease which has a detrimental effect on his liver functioning. In 2006, doctors administered a liver biopsy, which indicated Herrington had stage 0-1 liver fibrosis. (Compl. at 4.) In April 2009, Herrington sought medical care from S.R.C.I. Doctor Elliott-Blakesly[2] ("Dr. Elliott-Blakesly") after Herrington broke the fifth metatarsus of his right foot in two places. (Compl. at 4.) Dr. Elliott-Blakesly prescribed two non-steroidal anti-inflamitory drugs ("NSAIDs") to ease Herrington's foot pain and reduce inflamation. Herrington informed Dr. Elliott-Blakesly that he suffered from hepatitis C and liver fibrosis and expressed his concern that the NSAIDs could exacerbate his liver problems. Dr. Elliott-Blakesly assured Herrington that the medications would have no harmful effects on his liver if he took them as prescribed.

In December 2010, Herrington continued to experience pain in his foot and sought medical attention from S.R.C.I. Doctor Bristol ("Dr. Bristol"), who also prescribed NSAIDs. Herrington saw Dr. Bristol nearly once per month for several years, and at each appointment Herrington expressed

---

The court construes Herrington's claims liberally, and will treat his complaint as if he named all eleven parties in the caption of his complaint. However, the court lists only four defendants in the caption of this opinion for continuity purposes, as only those four defendants appear in the caption of the court's case management database.

[2] Neither the complaint nor any of the materials submitted pursuant to the motion to dismiss reference the first names of defendants Elliott-Blakesly, Bristol, or Clements.

concern about taking NSAIDs for an extended period of time given his liver health. Like Dr. Elliott-Blakesly, Dr. Bristol assured Herrington that the medications would have no detrimental effect on his liver if taken as prescribed.

In February 2012, Herrington underwent a second liver biopsy. The second biopsy indicated that Herrington's liver disease had progressed from stage 0-1 liver fibrosis to stage 3 liver cirrhosis. (Compl. at 4.) Herrington alleges that the progression of his liver disease resulted directly from his use of NSAIDs between April 2009 and February 2012. To obtain better medical attention, Herrington filed a medical grievance with the prison. In February 2013, Registered Nurse A. Clements ("Clements") responded to the grievance. Clements's response summarized Herrington's treatment for hepatitis C and explained that the prison would administer labs in May 2013 to determine Herrington's response to viral treatment. Clements's response did not include any "mention of liver failure or the need for a liver transplant." (Compl. at 5.) Herrington alleges that the crux of his grievance was his liver condition and the effect of the NSAIDs on his liver health. (Compl. at 5.)

Herrington filed a grievance appeal in March 2013. (Compl. at 5.) S.R.C.I. Grievance Coordinator James Taylor ("Taylor") denied Herrington's grievance appeal on the grounds that Herrington "did not properly file" the appeal. Herrington alleges that he "contacted Mr. James Taylor, asking for advice concerning what steps [he] should take." (Compl. at 5.)

In June 2013, Herrington filed this claim for violation of his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment under 42 U.S.C. § 1983. He seeks $50,200,000.00 in compensatory and punitive damages, and "requests that he be placed on the [l]iver transplant list, and that he receives a [l]iver transplant at the earliest possible date." (Compl.

at 6.) Defendants now move to dismiss, and argue that Herrington's claims against Dr. Elliott-Blakesly and Dr. Bristol are time-barred under Oregon's statute of limitations. Further, Defendants ask the court to dismiss Herrington's claims for failure to state a claim upon which relief can be granted.

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(2011). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

A motion to dismiss on statute of limitations grounds may be granted "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Morales v. City of L.A.*, 214 F.3d 1151, 1153 (9th Cir. 2000) (quotations and citation omitted).

In cases involving a plaintiff proceeding pro se, the court construes the pleadings liberally and affords plaintiff the benefits of any doubt. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) ("[F]ederal courts liberally to construe the 'inartful pleadings' of pro se litigants."). In other words, courts hold pro se pleadings to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, a pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Karim-Panahi*, 839 F.2d at 623-624.

*Discussion*

Defendants move to dismiss Herrington's claims under Federal Rules of Civil Procedure 12(b)(6). First, they contend that Herrington's claims against Dr. Elliott-Blakesly are time-barred under the statute of limitations governing claims brought under 42 U.S.C. § 1983. Next, they argue that all four of Herrington's claims for relief fail to state a claim upon which relief can be granted. The court will address each argument in turn.

I.  Statute of Limitations.

Defendants first argue that Herrington's claims against Dr. Elliott-Blakesly and Dr. Bristol are barred by Oregon's two-year statute of limitations. Herrington's response comes in the form of a question: "Plaintiff asks, 'when is the time of damage?' Plaintiff argues that the time of damage is when it is known that damage has been done . . . ." The court construes Herrington's argument liberally to mean that, because Herrington did not discover the significant progression of his liver disease until his second liver biopsy, the statute of limitations did not begin to run until February 2012. The court agrees with Herrington.

"State law determines the statute of limitations for claims brought under 42 U.S.C. § 1983." *Harding v. Galceran*, 889 F.2d 906, 907 (9th Cir. 1989), *citing Wilson v. Garcia*, 471 U.S. 261, 276-79 (1985), *superseded on other grounds as recognized by Merrigan v. Affiliated Bankshares of Colo., Inc.*, 775 F. Supp. 1408, 1411-12 (D. Colo. 1991). OR. REV. STAT. § 12-110(1) provides:

> An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit.

However, the period of limitations does not begin to run until a cause of action has "accrued." OR. REV. STAT. § 12-010.

The Oregon Supreme Court analyzed the issue of when a cause of action accrues in *Berry v. Branner*, 245 Or. 307, 308 (1966). There, a woman sued a surgeon for negligently leaving a needle in her abdomen following surgery. *Id*. Although the plaintiff experienced pain immediately following the surgery, she did not discover the presence of the needle until several years later. *Id*. The trial court concluded that the statute of limitations had run before the plaintiff discovered the needle in her abdomen and granted defendant's motion to dismiss. *Id*. The Oregon Supreme Court reversed and held that according to the "discovery rule," the plaintiff's claim did not accrue, and the statute of limitations did not begin to run, until "the time plaintiff obtained knowledge, or reasonably should have obtained knowledge of the tort committed upon her person by defendant." *Id*. at 316. The court explained:

> To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one.

*Id*. at 312.

Later cases expanded the application of the discovery rule to the other claims listed in § 12.110(1). For example, in *Whalen v. Am. Med. Response Nw, Inc.*, a woman sued a paramedic for an alleged sexual assault that occurred more than two years before she brought suit. 256 Or. App. 278, 280 (2013). The defendant moved for summary judgment and argued that, because § 12.110(1) specifically applies the discovery rule to cases involving "fraud or deceit," the legislature did not intend the discovery rule to apply to the other actions articulated in that section. *Id*. The trial court granted the defendant's motion, but the Oregon court of appeals reversed. *Id*. Citing *Berry*, the court of appeals held that "defendants do not propose, and we do not perceive, any textual reason why the discovery rule should apply to one cause of action in the first clause of ORS 12.110(1) but not to another." *Id*. at 286. The court also recognized that the Oregon Supreme Court had repeatedly rejected arguments similar to the defendant's and applied the discovery rule to other actions listed in § 12.110(1), including actions brought under 42 U.S.C. § 1983. *Id*. at 285, *citing T.R. v. Boy Scouts of Am.*, 344 Or. 282, 288 (2008).

The court, therefore, concludes the discovery rule applies here and Herrington's claim did not accrue until he "obtained knowledge, or reasonably should have obtained knowledge of" the tort committed against him. *Berry*, 245 Or. at 315-16. Herrington's first liver biopsy, which indicated he had stage 0-1 liver fibrosis, occurred August 2006. As a result of his broken foot, Dr. Elliott-Blakesly and Dr. Bristol prescribed Herrington NSAIDs between 2009 and 2010 – more than two years before Herrington filed this claim. However, Herrington did not discover the extent of his liver damage until February 2012, when a second liver biopsy indicated he had stage three liver cirrhosis. Herrington did not know, nor could he reasonably know, that he could assert a cause of action because prior to the second liver biopsy he did not know he had suffered any injury. Thus,

his claim did not accrue until February 2012, when he received the results of the second biopsy indicating significant progression of his liver disease. Because Herrington filed this claim in June 2013, well within the two-year statute of limitations, his claims against Dr. Elliott-Blakesly and Dr. Bristol for actions in 2009 and 2010 are not time-barred.

II.  Failure to State a Claim Upon Which Relief May be Granted.

Defendants next claim that Herrington's complaint fails to state a claim upon which relief may be granted. Defendants advance three arguments for dismissal. First, they argue Herrington fails to allege "personal involvement" by any of the defendants in the deprivation of his rights. Second, defendants contend Herrington's claims are "wholly insubstantial and frivolous." Third, Defendants argue Herrington's complaint fails to meet the specificity requirements of *Twombly* and *Iqbal*. The court agrees that Herrington fails to state a § 1983 claim and dismisses all four of Herrington's claims.

Before it analyzes the merits of Defendants' arguments, the court must address a preliminary matter. It is unclear from Herrington's complaint how many defendants are parties to this case. The caption of his complaint names only Dr. Elliott-Blakesly and Dr. Bristol as defendants. The following page of his complaint lists the following defendants:

> Dr. Elliott/Blakesly, S.R.C.I...
> Dr. Davis, Holy Rosary Hospital...
> Dr. Bristol, S.R.C.I...
> R.N. Neil, S.R.C.I...
> R.N. Folkman, S.R.C.I...
> R.N. S. Hodge, Medical Services Manager, S.R.C.I...
> S. Shelton, M.D., Medical Director, O.D.O.C...
> Michael F. Grower, Assistant Administrator,
> Operations Division, O.D.O.C...

(Compl. at 2.) Section "III. Parties" and the body of the complaint also name as defendants, in

addition to Dr. Elliott-Blakesly and Dr. Bristol, A. Clemens, a registered nurse at S.R.C.I. and James Taylor, the Grievance Coordinator at S.R.C.I. However, the body of the complaint does not reference, and contains no allegations regarding the conduct of, any of the defendants in the above-quoted list except Dr. Elliott-Blakesly and Dr. Bristol. Because Herrington is a pro se plaintiff in this case, the court will give him the benefit of the doubt and assume he intended to name all eleven defendants mentioned in the complaint as defendants. That said, the complaint contains no allegations regarding the conduct of the following defendants (1) Dr. Davis; (2) R.N. Neil; (3) R.N. Folkman; (4) R.N. S. Hodge; (5) S. Shelton, M.D.; (6) Michael F. Grower; and (7) The Operations Division, O.D.O.C. Because the complaint does not allege any wrongdoing on the part of any of these defendants, the court concludes that Herrington fails to state a claim as against these seven individuals and organizations. Therefore, the court dismisses all seven of the above-named individuals and organizations as defendants to this action.

   *A. Claims I and II.*

Claims I and II allege that between 2009 and 2012, Dr. Elliott-Blakesly and Dr. Bristol prescribed Herrington NSAIDs to reduce pain and inflamation in Herrington's broken foot. Herrington alleges that he told both doctors that he suffered from Hepatitis C, and "would always question [the doctors] about the effect those medications would have on his liver." Taking NSAIDs for such an extended period of time, Herrington alleges, caused the advancement in his chronic liver disease from stage 0-1 fibrosis to stage 3 liver cirrhosis.

   The Eighth Amendment to the United State Constitution provides, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and

it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). Courts have spilled a great deal of ink in an attempt to define "cruel and unusual punishment" by balancing "broad and idealistic concepts of dignity, civilized standards, humanity, and decency" with the goals and necessities of punishment." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), *quoting Jackson v. Bishop*, 404 F.2d 571, 579 (9th Cir. 1968). To this end, the Supreme Court has held that punishment must comport with "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102, *quoting Trop v. Dulles,* 356 U.S. 86, 101 (1958).

From these principles, the Court has determined that the government has an obligation to provide medical care for prisoners in its custody. "It is but just that the public be required to care for the prisoner, who cannot, by reason of the deprivation of his liberty, care for himself. *Estelle*, 429 U.S. at 104*, quoting Spicer v. Williamson*, 191 N.C. 487, 490 (1926). Thus, the government violates a prisoner's right to be free from cruel and unusual punishment by providing medical care that shows "deliberate indifference to serious medical needs of prisoners." *Estelle*, 429 U.S. at 104. However, not all failures to provide adequate medical care amount to constitutional violations. In *Estelle*, the Supreme Court reasoned:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an "unnecessary and wanton infliction fo pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id*. at 105-06. Deliberate indifference is more than a mere lack of due care, but a plaintiff need not allege that prison officials acted with an intent to cause harm. *Farmer,* 511 U.S. at 835. Courts have "routinely equated deliberate indifference with recklessness." *Id*. at 836. Alternatively, when a prisoner's allegations amount only to a claim for medical malpractice, his remedy is properly sought in state court under state law. *Estelle*, 429 U.S. at 107.

Here, Herrington's allegations do not assert a valid claim for violation of his Eighth Amendment rights. Herrington alleges that Dr. Elliott-Blakesly and Dr. Bristol prescribed him NSAIDs despite Herrington's disclosure that he suffered from Hepatitis C. He further alleges that the doctors "would always reassure him that there would be no ill effects." Even if the court assumed that prescribing NSAIDs to an individual with chronic liver disease falls below the level of due care required of medical professionals, the fact that both doctors reassured Herrington of the drugs' safety shows that both subjectively believed that the NSAIDs were safe. Because the doctors prescribed the drugs believing they were safe, their conduct did not evidence "deliberate indifference" to Herrington's health. Herrington's claims, at best, constitute claims for medical malpractice which, according to *Estelle*, should be adjudicated in state court according to the laws of Oregon. Therefore, Herrington does not adequately state a § 1983 claim against Dr. Elliott-Blakesly and Dr. Bishop for violation of his Eighth and Fourteenth Amendment rights, and the court will dismiss Herrington's first and second claims for relief.

*B. Claim III.*

Herrington's third claim for relief alleges that in February 2013, Clements responded to a grievance Herrington filed regarding his liver condition and his prolonged use of NSAIDS. In the response, Clements gave an overview of Herrington's hepatitis C treatment, but did not address all

of Herrington's concerns. The court concludes that Herrington does not properly allege a claim for violation of his constitutional rights because Herrington does not allege a cognizable constitutional injury. The Ninth Circuit has held that prisoners do not have a constitutional right to a specific grievance procedure. *Arias-Maldonado v. Sisto*, 499 Fed. Appx. 686, 686 (9th Cir. 2012) (mem.), *citing Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Further, the failure of a prison nurse to fully respond to all points of contention raised in a medical grievance is not an action which violates "the evolving standards of decency that mark the progress of a maturing society." Therefore, the court dismisses Herrington's third claim for relief.

    *C. Claim IV.*

    Herrington's fourth claim for relief alleges the following:

> On or Around 3/29/13, Plaintiff received a response to a Grievance Appeal from James Taylor, S.R.C.I. Grievance Coordinator[ ] stating that Plaintiff did not properly file the Grievance Appeal. Plaintiff contacted Mr. James Taylor, asking for advice concerning what steps plaintiff should take to remedy.

(Compl. at 5.) Even construing Herrington's claims liberally and giving him the benefit of the doubt, as it must, the court concludes that these allegations do not form the basis for a legitimate claim for relief. First, Herrington does not allege that he was in any way injured by Taylor's conduct. Second, Herrington does not allege facts which could allow the court to conclude Taylor acted with deliberate indifference to Herrington's serious medical need. Third, Herrington explains that he "contacted [Taylor], asking for advice concerning what steps Plaintiff should take to remedy." This suggests Herrington received the advice he sought, and his claim is moot. Therefore, the court dismisses Herrington's fourth claim for relief.

*Conclusion*

    For the aforementioned reasons, Defendants' motion to dismiss (Dkt. No. 20) is GRANTED.

However, because Herrington is pro se, the court will grant him an opportunity to cure, and will dismiss his complaint without prejudice to file an amended complaint. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) ("Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend . . . ."). However, the court will grant Herrington a limited time to refile and will dismiss his claim with prejudice if he does not file an amended complaint by June 9, 2014.

IT IS SO ORDERED

This 9th day of May, 2014.

                                                    /s/ John V. Acosta
                                                           JOHN V. ACOSTA
                                                      United States Magistrate Judge