UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JAMES LEROY HERRINGTON, | Case No.: 2:13-cv-0948-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| DR. JODEAN ELLIOT-BLAKESLEE, by and through her Personal Representative, Kathleen Elliot, | |
| and DR. THOMAS BRISTOL, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Introduction*

James Leroy Herrington ("Herrington") filed this lawsuit for violation of 42 U.S.C. § 1983 against two doctors (collectively "Defendants") employed with the Snake River Correctional Institution ("S.R.C.I."), where Herrington is currently incarcerated. (Am. Compl., ECF No. 87, at

OPINION & ORDER 1 [AHS]

1-2, 4.)[1] Herrington claims the violation of his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment, which he alleges resulted from Defendants' provision of constitutionally deficient medical care. (Am. Compl. at 5.) Defendants now move for summary judgment. (Defs.' Mot. for Summ. J., ECF No. 108.) Herrington failed to submit timely opposition to Defendants' motion, (Defs.' Notice of Non-Opp'n. to Defs.' Mot. for Summ. J., ECF No. 121), but responds by moving to exclude Defendants' expert testimony, (Pl.'s Mot. to Strike, ECF No. 127), and to retain a court-appointed expert witness (Pl.'s Mot. to Appoint Expert Witness, ECF No. 125). Based on the record before it, the court denies Herrington's motions and grants Defendants' motion for summary judgment.

*Background*

Herrington, an inmate at S.R.C.I., suffers from hepatitis C, a viral disease that detrimentally affects his liver function. (Dewsnup Decl. ¶ 4; Attach. 2, ECF No. 109-2, at 1.) In 2006, doctors administered a liver biopsy that indicated Herrington had stage 0-1 liver fibrosis. (Dewsnup Decl. ¶ 8.) In April 2009, Herrington sought medical care from S.R.C.I. Physician Jodean Elliot-Blakeslee ("Dr. Elliot-Blakeslee"[2]) after Herrington broke the fifth metatarsus of his right foot in two places. (Am. Compl. at 5; Dewsnup Decl. ¶ 10.) Dr. Elliot-Blakeslee prescribed ibuprofen, a non-steroidal anti-inflamitory drug ("NSAID"), and Tylenol, which contains active ingredient acetaminophen, to ease Herrington's foot pain and reduce inflamation. (Dewsnup Decl. ¶¶ 10, 11.) Herrington

---

[1] As Herrington's complaint does not contain numbered paragraphs, the court cites to the accordant page numbers.

[2] The complaint refers to the defendant as "Dr. Elliott-Blakesly." The spelling "Elliot-Blakeslee" from Defendants' motion for summary judgment is presumably correct and therefore is used here.

informed Dr. Elliot-Blakeslee he suffered from hepatitis C and liver fibrosis and expressed concern the medications could exacerbate his liver problems. (Am. Compl. at 5.) Dr. Elliot-Blakeslee assured Herrington although one of the medications[3], "could damage his [k]idneys," it would not harm his liver and that the other drug "could affect his [l]iver, but, 'that it would be alright.'" (Am. Compl. at 5.)

In December 2010, Herrington continued to experience pain in his foot and sought medical attention from S.R.C.I. Physician Thomas Bristol ("Dr. Bristol"), who also prescribed Tylenol and ibuprofen. (Am. Compl. at 8.) Herrington saw Dr. Bristol nearly once per month for approximately four years and at each appointment expressed concern about taking these medications for an extended period of time in light of his liver condition. (Am. Compl. at 8-10; Dewsnup Decl. Attach. 2, ECF No. 109-13, at 1-13.) Dr. Bristol joined in Dr. Elliot-Blakeslee's prior assurance that the two medications were adequate to manage his foot pain and posed little risk of kidney or liver damage, and he continued to prescribe them both. (Am. Compl. at 9-10.) Over the course of three years, prison medical staff monitored the condition of Herrington's hepatitis C at regular "special needs reviews," during which he showed no symptoms of toxicity from his medications. (Dewsnup Decl. ¶ 11.)

In February 2012, Herrington underwent a second liver biopsy that indicated chronic hepatitis C and stage-3 liver fibrosis. (Dewsnup Decl. ¶ 12.) The following month, Herrington began a course of treatment for his hepatitis. (Dewsnup Decl. ¶ 13.) By July 2012, he tested negative for

---

[3] In his complaint, Herrington transposes the two medications, erroneously classifying Tylenol as an NSAID and ibuprofen as acetaminophen. As a result, it is unclear to which medication Dr. Elliot-Blakeslee referred in Herrington's account of the conversation.

the virus, and as of February 2015, Herrington was stable and non-symptomatic for hepatitis or liver disease. (Dewsnup Decl. ¶¶ 13, 15.)

In June 2013, Herrington filed this claim for violation of his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment under 42 U.S.C. § 1983. (Am. Compl. at 5, 8.) Specifically, he alleges his progression from stage 0-1 to state 3 liver fibrosis between 2006 and 2012 resulted directly from Dr. Elliot-Blakeslee's and Dr. Bristol's prescription of ibuprofen and Tylenol from April 2009 to February 2012. (Am. Compl. at 4.) Herrington argues this treatment caused physical and emotional pain and suffering, amounting to deliberate indifference to a serious medical need, and unnecessary and wanton infliction of pain. (Am. Compl. at 5, 8.) He seeks compensatory, nominal, and punitive damages in amounts to be determined by the court and requests "permanent medical coverage" for the remainder of his incarceration and after his release. (Am. Compl. at 12.) Defendants move for summary judgment against the complaint, arguing Herrington fails to establish any genuine issue of material fact relating to any claim and that Defendants are qualifiedly immune from damages. (Defs.' Mot. for Summ. J. at 2.)

To support their motion, Defendants proffer the expert testimony of Dr. Daniel H. Dewsnup ("Dr. Dewsnup"), a licensed physician and infectious disease specialist employed by the Oregon Department of Corrections ("O.D.O.C."). (Dewsnup Decl.) According to Dr. Dewsnup, the dosage of Tylenol and ibuprofen recommended by Defendants, "taken as prescribed is adequate for management of chronic pain and will not have a significant impact on liver or kidney function." (Dewsnup Decl. ¶ 11.) In reference to Herrington's case specifically, Dr. Dewsnup concluded that "[t]here is no correlation between Mr. Herrington taking prescribed dosages of NSAIDs or Tylenol

for pain management and the progression to [s]tage 3 fibrosis." (Dewsnup Decl. ¶ 12.) Rather, he opined, "[t]he progression is likely a result of age, gender, and lifestyle choices like diet and exercise." (Dewsnup Decl. ¶ 12.)

*Legal Standard*

Summary judgment is appropriate where a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2015). Conversely, summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn,

summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with evidence. FED. R. CIV. P. 56(c) (2015). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation omitted).

*Preliminary Procedural Motions*

I. Plaintiff's Motion to Strike

To support their summary judgment motion, Defendants submit the expert testimony of Dr. Dewsnup. (Dewsnup Decl. ¶1.) The Dewsnup testimony addresses Herrington's medical history, diagnoses, and prescribed treatment, and describes the potential impact of the prescribed treatment on kidney and liver function. (Dewsnup Decl. at 2-3.) Herrington challenges the admissibility of this testimony, arguing Dr. Dewsnup's opinion is colored by a "conflict of interest" giving rise to potential bias given his employment by O.D.O.C. and retention by the Defendants. (Pl.'s Mot. to Strike at 2-3.)

A declaration in support of or opposition to a motion for summary judgment must be based on personal knowledge, provide facts that would be admissible in evidence, and show the declarant is competent to testify on the matters stated. FED. R. CIV. P. 56(c)(4). Federal Rule of Evidence 702

sets forth admissibility criteria for expert testimony, requiring, in relevant part, that experts: (1) be qualified by applicable knowledge, skill, experience, training, or education; (2) give testimony based on sufficient facts or data and the product of reliable principles and methods; and (3) reliably apply those principles and methods to the facts of the case. FED. R. EVID. 702. A party retaining an expert may not control the expert witness, who, like all other witnesses, is bound to testify truthfully. *Selvidge v. United States*, 160 F.R.D. 153, 156 (D. Kan. 1995). If credibility issues exist, vigorous cross-examination at trial, presentation of contrary evidence, and careful instruction on the burden of proof are the "traditional and appropriate means of attacking shaky but admissible evidence." FED. R. EVID. 702, Advisory Committee Notes (2000) (quotation omitted).

Under the applicable procedural and evidentiary rules, the mere fact Dr. Dewsnup is employed by O.D.O.C. and retained by Defendants does not necessarily demonstrate bias. Furthermore, bias alone is not grounds for evidentiary exclusion. Dr. Dewsnup is not controlled by Defendants and is bound, as are all witnesses, to testify truthfully. Based on his education and experience, Dr. Dewsnup is required to apply reliable principles and methods to the facts of this case. According to the substance of his declaration, Dr. Dewsnup has satisfied these requirements. As such, the declaration is admissible, and Herrington's motion to strike is denied.

II. Plaintiff's Motion to Appoint Expert Witness

Herrington also moves for the court to appoint an expert medical witness on his behalf. He notes the case centers on whether the two medications prescribed were the cause of his liver damage— a question he says can be answered "accurately and sufficiently" only by a hematologist, infectious disease specialist, or "physician [] trained and qualified to answer such questions." (Pl.'s

Mot. to Appoint Expert Witness at 2-3.)

Federal Rule of Evidence 706 provides "the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing." FED. R. EVID. 706(a). However, court-appointed experts typically are used in complex litigation where the record is not clearly developed by the parties, and generally serve the purpose of aiding the court in understanding the subject matter at hand. *See Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999) (appointing a physician expert witness where medical testimony on record was "not particularly clear"); *Woodroffe v. Oregon,* No. 2:12-cv-00124-SI, 2014 WL 1383400, at *5 (D. Or. April 8, 2014) ("This Rule permits a court to appoint a neutral expert to assist the court to understand complex, technical, or esoteric subject matter."); *In re Joint E. & S. Districts Asbestos Litig.*, 830 F. Supp. 686, 693 (E.D.N.Y. 1993) (noting that court appointment of experts is appropriate only in "rare circumstances" and should be reserved for "exceptional cases" in which the ordinary adversarial process does not suffice, such as complex mass tort problems.) Courts do not invoke Rule 706 simply to "appoint an expert on behalf of an indigent civil party." *Woodroffe,* 2014 WL 1383400, at *5; *see also Gorton v. Todd*, 793 F. Supp. 2d 1171, 1178 n.6 (E.D. Cal. 2011) (where "all parties agree[d]" Rule 706 did not permit the appointment of a neutral expert witness solely for an indigent prisoners' "own benefit" in aiming to prove deliberate indifference.)

The facts of this case are not particularly complex. The relevant subject matter or evidence is not difficult to understand. The medical records provided by Defendants in support of their motion for summary judgment are clearly developed. Whether the drugs prescribed, taken alone or in combination, posed a significant health risk to Herrington is a question easily explained and

answerable by an expert medical witness. Dr. Dewsnup, a trained infectious disease specialist, is particularly well-suited for this task and has done so sufficiently in his declaration. As such, no rare or exceptional circumstances exist to warrant the appointment of a Rule 706 expert. Accordingly, Herrington's motion to retain an expert witness is denied, and the court considers Defendants' motion for summary judgment.

## *Discussion*

Defendants move for summary judgment, arguing first that there is no causal nexus between the Defendants' prescription of the drugs and the progression of Herrington's liver disease and, second, that Defendants are qualifiedly immune. (Defs.' Mot. For Summ. J. at 2, 7, 8-9.) Herrington does not refute these assertions directly, but maintains in his motion to strike and motion to retain an expert witness that the two medications, taken together and for an extended period of time, are responsible for the deterioration of his liver condition. Neither party appears to dispute the underlying facts of the case, but issues regarding the causation of Herrington's liver deterioration and the risk posed by the prescribed treatment remain contested.

A § 1983 claim against a government official entails a two-part analysis. First, a court considers whether the official's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *abrogated in part by Pearson v. Callahan,* 555 U.S. 223, 236 (2009) (the latter case holding the particular order of this sequence of analysis is not mandatory). A plaintiff asserting such a violation must prove both fault and causation. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,* 520 U.S. 397, 398 (1997) (citing *Pembaur v. Cincinnati,* 475 U.S. 469, 481(1986)). Absent a constitutional violation, no further inquiry is necessary, and judgment is entered for the official. *Pearson,* 555 U.S. at 231. However, if the court determines a constitutional violation occurred, it

next analyzes whether the official is entitled to qualified immunity. *Id.* For the official to fall under this protection, the right at issue must have been "clearly established" at the time of the official's alleged misconduct. *Id.* at 232 (citing *Saucier,* 533 U.S. at 201). Qualified immunity is applicable unless an official's conduct violates a "clearly established" constitutional right. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The constitutional right at issue in this case is the Eighth Amendment right to be free from cruel and unusual punishment. This right is violated when prison medical officials act with deliberate indifference to an incarcerated prisoner's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference comprises both an objective and a subjective component. Objectively, an official's conduct must pose "a risk of 'objectively, sufficiently serious' harm." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir.1995)). Harm is objectively and sufficiently serious when a "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *Estelle*, 429 U.S. at 104).

Subjectively, the official must also possess a "'sufficiently culpable state of mind' in denying the proper medical care." *Clement*, 298 F.3d at 904 (quoting *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir.1995)). Deliberate indifference "describes a state of mind more blameworthy than negligence . . . [and] requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Rather, the term encompasses "[a]cting or failing to act" in the face of "a substantial risk of serious harm to a

prisoner," equivalent to "recklessly disregarding that risk." *Id.* at 836. Recklessness in this sense requires consciousness of the substantial risk of serious harm. *Id.* at 839 (citing Model Penal Code § 2.02(2)(c)). Conversely, an "inadvertent failure to provide adequate medical care" or a "mere allegation[] of [medical] malpractice" do not constitute deliberate indifference. *Estelle*, 429 U.S. at 105, 106.

The District Court for the Eastern District of California at least twice recently has held the prescription of multiple pain medications, including both Tylenol and ibuprofen, by prison medical staff to an inmate with liver disease did not amount to deliberate indifference. *Elliott v. Tseng*, No. 2:11 CV 03118 KJM, 2014 WL 3966377, at *8 (E.D. Cal. Aug. 13, 2014) (granting summary judgment for defendant doctor who prescribed "NSAIDs[], like ibuprofen or acetaminophen" to a hepatitis C-positive prisoner); *Montiel v. Yates*, No. 1:11CV02145 LJO DLB, 2014 WL 3615801, at *9 (E.D. Cal. July 22, 2014). In *Montiel*, a prisoner afflicted by a "history of [h]epatitis C" and seen by the prison's hepatitis C clinic began to suffer back pain. *Id.*, at *2, *8. In early 2008, prison medical staff prescribed an NSAID and, soon after, Tylenol. *Id.*, at *2. One month later, he was prescribed "numerous NSAIDs," in several "different forms." *Id.* For the next two years, the prisoner continued to experience pain and was prescribed yet more NSAIDs, in addition to two stronger pain medications. *Id.* By 2010, prison medical staff had prescribed "Tylenol, ibuprofen and just about every NSAID that exists." *Id.*, at *5 (quotation omitted). During at least one meeting with his doctors, the prisoner complained of pain in his "liver area." *Id.*, at *8. Later alleging cruel and unusual punishment, the prisoner asserted the medical professionals acted with deliberate indifference in prescribing him NSAIDs, which he claimed "further damage[d] his liver." *Id.*, at *7. To refute that contention, defendants proffered a declaration from one of the defendant doctors, who concluded

the treatment prescribed was "a medically appropriate course of treatment." *Id.,* at *8. The district court agreed that the treatment was "medically acceptable under the circumstances" as a matter of law and granted the defendant doctors' motion for summary judgment. *Id.* The court noted the prisoner, as a lay witness, was not qualified to render an opinion on the propriety of the treatment, and his citation to medical texts was insufficient. *Id.,* at *7. However, the doctor defendant's expert testimony, "made within the context of evaluating [the prisoner] from a medical standpoint, [wa]s entitled to deference in the absence of any evidence refuting it." *Id.,* at *8 (citing FED. R. CIV. P. 56(d)(4); FED. R. EVID. 702).

Based on the record provided, Herrington's § 1983 claim suffers from two independently fatal flaws. First, the court finds no evidence to support a causal nexus between the Defendants' prescribed treatment and the progression of Herrington's liver fibrosis. To prove a constitutional violation, Herrington must establish causation. *Bd. of Cty. Comm'rs of Bryan Cty., Okl.,* 520 U.S. at 398. Though Herrington alleges in his complaint that the medications directly caused his liver fibrosis to progress, he fails to provide any evidence to support that allegation. As Dr. Dewsnup testified, the dosage of the drugs prescribed did not pose a risk of significant impact to liver or kidney function. Under *Montiel*, Dr. Dewsnup's medical opinion is entitled to deference in the absence of any refuting evidence. Herrington has therefore failed to raise a genuine dispute of any material fact as to causation of his liver fibrosis.

Second, even if causation could be proved, Defendants' actions satisfy neither the objective nor subjective components of deliberate indifference. Objectively, the Defendants' prescription of Tylenol and ibuprofen, even in combination and over the course of multiple years, did not pose a risk of sufficiently serious harm. The treatment prescribed, as mentioned above, did not result in further

significant injury to Herrington or inflict upon him the level of pain or harm proscribed by *McGuckin* and, therefore, did not implicate the protections of the Eighth Amendment.

Nor did Defendants subjectively, consciously disregard a substantial risk of harm when they prescribed the drugs to Herrington. Again, as Dr. Dewsnup testified and Herrington failed to rebut, the recommended treatment did not pose a risk of serious harm to Herrington's liver function. One cannot disregard a risk that does not exist. Similarly, a risk cannot be substantial when it does not exist. Herrington claims that both Defendants acknowledged one of the medications posed a "slight" risk of effect to his liver. However, to defeat summary judgment, Herrington must go beyond the allegations in the complaint and produce evidence which creates a genuine issue of material fact. He has not done so. Therefore, absent any evidence to the contrary, no juror reasonably could find Defendants acted with deliberate indifference to Herrington's medical need.

As no constitutional violation has occurred, the court does not reach or address the issue of qualified immunity.

## *Conclusion*

Based on the conclusions stated above, Plaintiff's motion to appoint an expert witness, (ECF No. 125), and Plaintiff's motion to strike (ECF No. 127), are DENIED. Defendants' motion for summary judgment (ECF No. 108) is GRANTED.

DATED this 11th day of April, 2016.

JOHN V. ACOSTA
United States Magistrate Judge